UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDRE LEE COLEMAN #173324,

    Plaintiff,

v.

BERTINA BOWERMAN,

    Defendant.

Case No. 2:09-cv-24

HON. R. ALLAN EDGAR

**OPINION**

**I. Facts**

Plaintiff Andre Lee Coleman #173324, an inmate currently confined at the Marquette Branch Prison, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Bertina Bowerman, who was employed as a prison guard at the Alger Maximum Correctional Facility (LMF) during the pertinent time period.

Plaintiff's complaint alleges that on August 3, 2007, while he was confined at LMF, Defendant searched his cell and improperly confiscated certain items. Defendant then falsified a misconduct charge against Plaintiff. Plaintiff claims that because Defendant's conduct occurred in the "temporal proximity" of interviews he had recently had with other prison staff regarding his grievances, that such conduct was retaliatory.

Plaintiff claims that Defendant's actions violated his rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff is seeking compensatory and punitive damages, as well as equitable relief.

## II. Analysis

### A. Standard of Review

Presently before the Court is the Defendant's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf.*

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

### B. Equal Protection

Defendant states that she is entitled to summary judgment of Plaintiff's equal protection claim because Plaintiff has failed to show that he was treated differently than similarly situated individuals. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations on this point are wholly conclusory. Plaintiff merely states that the August 11, 2007, misconduct ticket regarding the legal foot locker was dismissed at the hearing, and that this shows that he was discriminated against by Defendant. However, Plaintiff provides no specific factual allegations to support his contention that the misconduct was motivated by a discriminatory intent. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). Therefore, Defendant is entitled to summary judgment on Plaintiff's equal protection claim.

### C. Retaliation

Defendant claims that she is entitled to summary judgment on Plaintiff's retaliation claims. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in

protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff was transferred to LMF in July of 2007, and has filed at least 161 grievances during his incarceration at LMF. (Defendant's Exhibit A, Grievance Inquiry Printout.) Plaintiff wrote 5 grievances against LMF medical staff in late July and early August of 2007, asserting inadequate treatment. (Defendant's Exhibit B.) On August 2, 2007, Resident Unit Officer Denman wrote a major misconduct ticket on Plaintiff for storing personal property in the footlocker that was provided solely for excess legal material. (Defendant's Exhibit C.) Plaintiff then filed 4 grievances, asserting that Denman retaliated against him, deprived him of his ability to maintain a well-groomed appearance, and placed him in a potentially fire hazardous situation. (Defendant's Exhibit D.)

On August 3, 2007, Defendant wrote a major misconduct ticket on Plaintiff for sexual misconduct, asserting that Plaintiff told her that he could "fuck [her] face," and do other things to her. (Defendant's Exhibit 1.) Plaintiff then filed grievances contending that Defendant had opened his legal mail outside of his presence on August 3, 2007, had made hostile statements to him after he was interviewed on some health care grievances, and that the misconduct ticket was fabricated. (Defendant's Exhibit F.) On August 11, 2007, Defendant wrote a major misconduct on Plaintiff for disobeying a direct order to quit yelling. (Defendant's Exhibit G.) Several hours later, Defendant wrote a major misconduct on Plaintiff for storing personal books in his legal footlocker and confiscated the footlocker following a cell search. (Defendant's Exhibit H.) Plaintiff filed a

4

grievance challenging the confiscation, alleging that Defendant never actually searched the cell, but merely seized the legal footlocker in retaliation for a grievance interview Plaintiff had with Nurse Thompson. (Defendant's Exhibit I.)

Defendant concedes that Plaintiff's use of the grievance system is protected conduct for purposes of a retaliation claim. As noted above, the adverse action asserted by Plaintiff is that Defendant opened his legal mail outside of his presence and removed it from the envelopes on August 3, 2007, and seized his legal footlocker and falsified a misconduct charge on August 11, 2007. Finally, Plaintiff claims that the "temporal proximity" of Defendant's conduct to the grievance interview by Nurse Thompson shows the necessary causation.

Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

As noted by Defendant, Plaintiff is a prolific grievance filer, who began filing grievances immediately following his arrival at LMF and filed at least 25 grievances between July and August of 2007, as well as at least 161 grievances during his incarceration at LMF. (Defendant's Exhibit A, Grievance Inquiry Printout.) Because grievance interviews are required by MDOC Policy Directive 03.02.130 ¶ Y, Plaintiff must have received grievance interviews on a near daily basis during the pertinent time period. Therefore, the fact that Defendant's conduct occurred following a grievance interview, without more, is not sufficient to create an issue of fact regarding retaliatory motive. Plaintiff has failed to allege any additional facts showing that Defendant's conduct was retaliatory. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**D. Legal mail violation**

Plaintiff claims that Defendant improperly opened his legal mail outside of his presence. Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). The Michigan Department of Corrections may require that inmates specifically request that their legal mail be opened in their presence. *Knop v. Johnson*, 667 F. Supp. 467, 473 (W.D. Mich. 1987), *appeal dismissed*, 841 F.2d 1126 (6th Cir. 1988). Further, a prison can restrict the opening of special mail in the presence of the inmate to those situations wherein the sender is identified as an attorney and the envelope makes a specific restriction on the opening. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). With regard to mail from an inmate's attorney, prison officials have a right to open and inspect such mail for contraband. However, they may not read the mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential. *Lavado v. Keohane*, 992 F.2d 601, 607-09 (6th Cir. 1993); *see also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (court abandoned the *per se* rule that the Constitution

6

requires that the opening and inspection of legal mail be in the presence of the inmate), *cert. denied*, 510 U.S. 1123 (1994).

The Sixth Circuit has ruled unconstitutional a prison policy that treated all mail from the Attorney General's Office as ordinary mail, even if an inmate notified the mailroom that a certain piece of mail was confidential. *Muhammad v. Pitcher*, 35 F.3d 1081 (6th Cir. 1994) (majority opinion). In *Muhammad*, the plaintiff claimed that the defendants violated his constitutional rights by opening and inspecting mail from the Attorney General outside of plaintiff's presence. *Id.* at 1082. The defendants argued that prisoners did not have an interest in maintaining confidentiality regarding mail from the Attorney General because the Attorney General's Office represented the prison and so was adverse to the inmates. *Id.* The court disagreed, noting that the Attorney General's Office frequently serves prisoners in the same way that legal assistance organizations do and that any response to a confidential inquiry by a prisoner might well be confidential itself. *Id.* at 1083. In addition, the court in *Muhammad* stated:

> The conclusion that mail from an attorney general to an inmate may be confidential should not be surprising, for courts have consistently recognized that "legal mail" includes correspondence from elected official and government agencies, including the offices of prosecuting officials such as state attorneys general.

*Id.* (citations omitted).

The court noted that the defendants in *Muhammad* never expressed the intention of trying to treat confidential mail from the Attorney General's Office any differently than it treated nonconfidential correspondence. *Id.* at 1084. The court reasoned that, as a result, the plaintiff could reasonably expect that any mail from the Attorney General's Office would be opened outside his presence, which would "chill the plaintiff from turning to the Attorney General's Office under circumstances in which the office could otherwise be of service." *Id.* The court concluded that the

defendants' practice of opening properly marked mail addressed to the plaintiff from the Attorney General's Office outside the plaintiff's presence was unconstitutional. *Id.* at 1086.

In response to the decision in *Muhammad*, the MDOC changed the procedure for handling Attorney General mail on November 2, 1994. The current procedure treats mail addressed from the Attorney General's Office in the same manner as other legal mail. The procedure provides that a prisoner is entitled to have mail from the Attorney General's office opened in his presence when the mail is clearly identified on the envelope as being from the Attorney General's office and when the prisoner has requested that the mail be opened in his presence. The step II grievance response regarding this issue clearly states that Defendant opened Plaintiff's mail outside his presence in violation of prison policy. Plaintiff offers a copy of the envelope as an exhibit to his complaint, which shows that the envelope was clearly marked as being from the Attorney General's office. Therefore, it appears that there is an issue of fact regarding whether Defendant violated Plaintiff's constitutional rights. Therefore, Defendant is not entitled to summary judgment on this claim.

**E. Claim for injunctive relief**

Plaintiff seeks to be transferred to a level II facility in order to complete Assaultive Offenders Group Program, and to be transferred to the Marquette Branch Prison. The court notes that a transfer to another prison moots a prisoner's request for declaratory or injunctive relief. *Preiser v. Newkirk*, 422 U.S. 395, 402-03, 95 S. Ct. 2330, 2335 (1975); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Because Plaintiff was transferred to MBP from LMF following the Defendant's alleged misconduct in this case, his claim for injunctive relief is now moot. *Preiser*, 422 U.S. at 402-03, 95 S. Ct. at 2335; *Kensu*, 87 F.3d at 175.

**III. Conclusion**

In light of the foregoing, the court concludes that Defendant is entitled to summary judgment on Plaintiff's equal protection and retaliation claims, but that Plaintiff's claim regarding the opening of his legal mail outside of his presence may not be dismissed at this time. Accordingly, it is recommended that Defendant's Motion for Dismissal and / or Summary Judgment (Docket #14) be granted, in part.

An Order consistent with this Opinion will be entered.


Dated:     3/25/2010                                        /s/ R. Allan Edgar
                                                            R. ALLAN EDGAR
                                                            UNITED STATES DISTRICT JUDGE